```
                    FILED
           CLERK, U.S. DISTRICT COURT

                  8/23/2024

          CENTRAL DISTRICT OF CALIFORNIA
          BY:      MMC        DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2024 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 2:24-CR-00514-MRA |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5: Securities Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 1957: Unlawful Monetary Transactions] |
| MICHELLE BISNOFF,   aka "Michelle Angeline     Silverstein,"   aka "Shelly Silverstein," | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH NINE

[15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

*Defendant BISNOFF and Esos Rings, Inc.*

1. Defendant MICHELLE BISNOFF, also known as ("aka") "Michelle Angeline Silverstein," aka "Shelly Silverstein," was a resident of the Pacific Palisades neighborhood of Los Angeles, California.

2. Esos Rings, Inc. ("Esos") was a Delaware corporation defendant BISNOFF formed in February 2017 and operated from her

residence in the Pacific Palisades neighborhood of Los Angeles and Santa Barbara, California.  Defendant BISNOFF was the Chief Executive Officer of Esos and its sole control person.

3.  Defendant BISNOFF sold shares of Esos, which constituted "securities" within the meaning of the Securities Exchange Act of 1934.

4.  Defendant BISNOFF controlled Citibank Checking account number X8828 ("Esos Account X8288") and BBVA Bank account number X5007, which became account number X3242 after BBVA Bank was acquired by PNC Bank in 2021, which were held in the name of Esos.  Defendant BISNOFF also maintained a joint Citibank checking account with her spouse, bearing account number X0533 ("BISNOFF Account X0533").  These accounts were all domiciled within the Central District of California.

*The '609 Patent*

5.  On April 12, 2016, the U.S. Patent and Trademark Office ("USPTO") issued Patent No. 9,313,609 (the "'609 Patent") to Joseph Nicholi Prencipe ("Prencipe"). The '609 Patent covered a smart ring device that contains a "transponder in a ring" enabling it "to communicate with other devices" "via, in part, near field communication ["NFC"] . . ."  Prencipe was the sole inventor and original owner of the '609 Patent.

6.  On October 10, 2016, Prencipe assigned the '609 Patent to McLear & Co., Inc.("McLear"), which was a smart ring technology company, for $500. On October 20, 2016, Prencipe, on behalf of McLear, recorded the assignment with the USPTO.

B.   THE SCHEME TO DEFRAUD

7.   Beginning on a date unknown, but no later than in or about February 2017, and continuing through at least on or about August 22, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant BISNOFF, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and the mails, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances by: (1) employing a scheme to defraud; (2) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers and prospective purchasers of securities (the "victim-investors"), by making and causing to be made materially false and fraudulent statements and material omissions to the victim-investors about Esos's business and defendant BISNOFF's use of the victim-investors' investments.

8.   The scheme to defraud operated, in substance, as follows:

   a.   In order to persuade victim-investors to invest in Esos, defendant BISNOFF falsely represented that Esos owned the patents for smart rings.  In fact, as defendant BISNOFF then knew, Esos did not own these patents because the '609 Patent had been assigned to McLear and neither Prencipe or McLear have ever withdrawn, rescinded, voided or modified the assignment to McLear; and the purported assignments to Esos were invalid because they post-

3

dated the assignment to McLear, were not fully executed in any case and at least one of the signatures they purported to bear was forged.

   b. In order to persuade victim-investors to invest in Esos, defendant BISNOFF also falsely represented that Esos would use the invested funds to increase its manufacturing capabilities and its inventory. In fact, as defendant BISNOFF then knew and concealed from the victim-investors, the invested funds were not used to increase Esos' manufacturing capabilities and inventory and some of their investments were used to pay defendant BISNOFF's personal expenses, including the rent for her personal residence, and to make Ponzi payments to other victim-investors.

   c. In order to persuade victim-investors to invest in Esos, defendant BISNOFF also falsely represented that the shares they bought would be quickly repurchased in "buy backs" at a price in excess of what the victim-investors had paid for the shares, effectively guaranteeing the victim-investors a quick profit on their investments. Defendant BISNOFF falsely represented that the buy backs would result from large investments that defendant BISNOFF claimed were about to be made into Esos and/or the acquisition of Esos that defendant BISNOFF claimed was about to occur. In fact, as defendant BISNOFF then knew, none of these purported large investments and acquisitions would ever happen as the purported large investors and new owners had had no, or at best, little contact with defendant BISNOFF and Esos.

   d. In order to persuade victim-investors to invest in Esos, defendant BISNOFF also falsely represented that Esos was earning substantial profits. In fact, as defendant BISNOFF then knew, Esos was not profitable, and the financial statements and tax returns

4

defendant BISNOFF provided to investors had not been prepared or signed by the CPA and CPA firm identified on those documents.

      e.   Defendant BISNOFF directed the victim-investors to send the money to purchase Esos shares to Esos bank accounts by means of interstate wires.

      f.   Defendant BISNOFF operated Esos as a Ponzi scheme, using incoming revenue comprised of victim-investor funds not to further Esos' business operations but, instead, to fund the promised "buy backs" of other victim-investors' shares. Defendant BISNOFF operated Esos in this way to further the fraudulent scheme and deceive the victim-investors into believing that their investments were performing as defendant BISNOFF had represented and promised they would, thus preventing the victim-investors from discovering that defendant BISNOFF was operating Esos as a Ponzi scheme and a fraud to obtain money for herself.

      g.   In furtherance of the scheme and in order to lull the victim-investors into believing their funds were safely invested as she had represented, defendant BISNOFF sought to reassure victim-investors that any delays in the promised buy backs were due to COVID and the purported standstill of logistics and Esos's supply chain that resulted, among other things. In fact, as defendant BISNOFF knew, these excuses were false and the promised buy backs did not occur because the claimed large investors and new owners who would purportedly fund the buy backs never made or intended to make such investment in and acquisitions of Esos.

9.   In executing the fraudulent scheme described above, defendant BISNOFF, operating through Esos, fraudulently obtained

custody and control of approximately $2.14 million and caused victim-investors to lose at least approximately $1.36 million.

C. EXECUTIONS OF THE FRAUDULENT SCHEME

10. On or about the dates set forth below, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, and in furtherance of the manipulative and deceptive devices described above, defendant BISNOFF directly and indirectly caused the following uses of a means and instrumentality of interstate commerce in connection with the purchase and sale of securities:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| ONE | 10/21/2019 | Transfer of approximately $350,000 from Investor A.C., by means of interstate wire communication, to Esos Account X8828 to purchase 20,000 shares of Esos. |
| TWO | 10/13/2020 | Transfer of approximately $30,000 from investor M.H., by means of interstate wire communication, to Esos Account X8828 to purchase 3,000 shares of Esos. |
| THREE | 11/16/2020 | Transfer of approximately $25,000 from investor K.W., by means of interstate wire communication, to Esos Account X8828 to purchase shares of Esos. |
| FOUR | 12/29/2020 | Transfer of approximately $25,000 from investor T.L., by means of interstate wire communication, to Esos Account X8828 to purchase 2,500 shares of Esos. |
| FIVE | 12/30/2020 | Transfer of approximately $25,000 from investor R.K., by means of interstate wire communication, to Esos Account X8828 to purchase 2,500 shares of Esos. |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| SIX | 2/4/2021 | Transfer of approximately $250,000 from investor D.Z., by means of interstate wire communication, to Esos Account X8828 to purchase 25,000 shares of Esos. |
| SEVEN | 7/15/2021 | Transfer of approximately $25,000 from investor K.W., by means of interstate wire communication, to Esos Account X8828 to purchase shares of Esos. |
| EIGHT | 12/2/2021 | Transfer of approximately $20,000 from investor K.S., by means of interstate wire communication, to Esos Account X8828 to purchase 2,000 shares of Esos. |
| NINE | 6/2/2022 | Transfer of approximately $3,000 from investor K.W., by means of interstate wire communication, to Esos Account X8828 to purchase shares of Esos. |

COUNTS TEN THROUGH EIGHTEEN

[18 U.S.C. § 1343]

11. The Grand Jury realleges paragraphs 1 through 6 and 8 through 10 of this Indictment here.

A. THE SCHEME TO DEFRAUD

12. Beginning on a date unknown, but no later than in or about February 2017, and continuing through at least on or about August 22, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant BISNOFF, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victim-investors as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts.

13. The scheme to defraud operated, in substance, as described in paragraphs 8 and 9 of this Indictment.

B. USE OF INTERSTATE WIRES

14. On or about the dates set forth below, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant BISNOFF transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

///

///

///

8

| COUNT | DATE | INTERSTATE WIRING |
|---|---|---|
| TEN | 10/21/2019 | Transfer of approximately $350,000 from Investor A.C., by means of interstate wire communication, to Esos Account X8828. |
| ELEVEN | 10/13/2020 | Transfer of approximately $30,000 from investor M.H., by means of interstate wire communication, to Esos Account X8288. |
| TWELVE | 11/16/2020 | Transfer of approximately $25,000 from investor K.W., by means of interstate wire communication, to Esos Account X8828. |
| THIRTEEN | 12/29/2020 | Transfer of approximately $25,000 from investor T.L., by means of interstate wire communication, to Esos Account X8828. |
| FOURTEEN | 12/30/2020 | Transfer of approximately $25,000 from investor R.K., by means of interstate wire communication, to Esos Account X8828. |
| FIFTEEN | 2/4/2021 | Transfer of approximately $250,000 from investor D.Z., by means of interstate wire communication, to Esos Account X8828. |
| SIXTEEN | 7/15/2021 | Transfer of approximately $25,000 from investor K.W., by means of interstate wire communication, to Esos Account X8828. |
| SEVENTEEN | 12/2/2021 | Transfer of approximately $20,000 from investor K.S., by means of interstate wire communication, to Esos Account X8828. |
| EIGHTEEN | 6/2/2022 | Transfer of approximately $3,000 from investor K.W., by means of interstate wire communication, to Esos Account X8828. |

|   |   |
|---|---|
| 1 | COUNT NINETEEN |
| 2 | [18 U.S.C. § 1028A(a)(1)] |

15.  On or about September 23, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant MICHELLE BISNOFF, also known as ("aka") "Michelle Angeline Silverstein," aka "Shelly Silverstein," knowingly possessed, transferred, and used, without lawful authority, means of identification that defendant BISNOFF knew belonged to another person, that is the name, Certified Public Account (CPA) License Number, and Preparer Tax Identification Number (PTIN) of M.B., during and in relation to the offense of Wire Fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in Count Thirteen of this Indictment.

COUNT TWENTY

[18 U.S.C. § 1343]

16. The Grand Jury realleges paragraphs 1 through 6 and 8 through 10 of this Indictment here.

A. THE ECONOMIC INJURY DISASTER LOAN PROGRAM

17. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of loans, referred to as Economic Injury Disaster Loans ("EIDL"), through a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

18. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

19. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

20. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described in paragraph 19 above. Any funds issued under an EIDL loan were issued directly by the SBA.

21. EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

B. THE SCHEME TO DEFRAUD

22. Beginning no later than on or around March 30, 2020 and continuing until at least in or around August 28, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant BISNOFF, knowingly and with intent to defraud, devised, intended to devise, and participated in a scheme to defraud the SBA, and to obtain money and property by means of material false pretenses, representations, and promises, and the concealment of material facts.

23. The fraudulent scheme operated and was carried out, in substance, as follows:

    a. Defendant BISNOFF, using the name "Michelle Silverstein" and identifying herself as the Chief Operating Officer of Esos, applied for a $150,000 EIDL loan.

    b. Defendant BISNOFF knowingly made false statements to the SBA in connection with the application for the EIDL loan for

12

Esos, including false statements about (i) the gross revenue for the 12-month period preceding the disaster; (ii) the cost of goods sold in the 12-month period preceding the disaster; (iii) the truth and accuracy of all the information and documents submitted in or with the application; and (iv) the intended use of the loan proceeds, including false certifications that the loan proceeds would be used for permissible business purposes.

        c.    Defendant BISNOFF would use the fraudulently obtained EIDL loan proceeds for her own personal benefit, including for non-business expenditures not permitted under the EIDL program, such as the rent for the residence defendant BISNOFF lived in with her family and transfers to her personal checking account X0533.

C.    <u>USE OF THE WIRES</u>

    24.  On or about May 14, 2020, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant BISNOFF caused the transmission of $149,900 in EIDL loan proceeds from the SBA into Esos Account X8828 by means of wire communication in interstate commerce.

COUNTS TWENTY-ONE AND TWENTY-TWO

[18 U.S.C. § 1957]

25.  The Grand Jury realleges paragraphs 1 through 6, 8 through 10, 13, 14, 17 through 21, 23 and 24 of this Indictment here.

26.  On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant BISNOFF, knowing that the funds involved represented the proceeds of some form of unlawful activity, engaged in the following monetary transactions in criminally derived property of a value greater than $10,000, which funds in fact were derived from the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, as alleged in Counts Eleven and Twenty of this Indictment:

///

///

///

| COUNT | DATE | TRANSACTION |
|---|---|---|
| TWENTY-ONE | 6/25/2020 | Transfer of approximately $15,000 from Esos Account X8828 to BISNOFF Account X0533. |
| TWENTY-TWO | 11/2/2020 | Transfer of Approximately $15,628 from Esos Account X8828 via Citibank Official Check to defendant BISNOFF's landlord M.S. |

A TRUE BILL


__/s/_____
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

DAVID R. FRIEDMAN
Assistant United States Attorney
Chief, Criminal Appeals Section

ALEXANDER P. ROBBINS
Assistant United States Attorney
Deputy Chief, Criminal Appeals Section

RANEE A. KATZENSTEIN
Assistant United States Attorney
Criminal Appeals Section